UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                    CASE NO.

**AKD INVESTMENTS, LLC**                                  **14-13076**
                                                          **SECTION A**
DEBTOR                                                    CHAPTER 11

<u>**REASONS FOR ORDER**</u>

For the following reasons, the Motion for an Expedited Hearing on the Objection to Court's Order of January 23, 2015 (and Motion to Reconsider Same) (pleading 65) and the Objection to Court's Order of January 23, 2015 (and Motion to Reconsider Same) (pleading 62) are **DENIED**.

On November 12, 2014, AKD Investments, L.L.C. ("AKD") filed a Voluntary Petition for Relief under Title 11, chapter 11 of the United States Bankruptcy Code.  No trustee has been appointed and AKD continues to manage its business as a debtor-in-possession.   On October 30, 2014, Belladoggie, L.L.C. ("Belladoggie") filed a Voluntary Petition for Relief under Title 11, chapter 11 of the Bankruptcy Code.  Both debtors are owned by the same individual.

AKD's sole business is the rental of a single piece of real property to a salon.  The tenant, Belladonna, is also solely owned by AKD's sole member.  On the filing date, AKD was indebted to Magazine Investments I, LLC ("Magazine") in the approximate amount of $2,174,844.27.  Magazine's debt is secured by a mortgage on AKD's property.  At the time the case was filed, AKD had not made a payment on the mortgage in three (3) years.

Belladoggie's primary lender is BizCapital BIDCO II, L.L.C. ("BizCapital") who holds a mortgage on its real estate and a second mortgage on AKD's property to secure its approximate debt of $2,879,403.70.  Belladoggie is in the business of operating a pet salon and boarding facility.  Financial difficulties in its buildout and operations placed a strain on both of its sister companies, Belladonna and AKD.

On November 17, 2014, Magazine filed a Motion for Relief From the Automatic Stay, seeking continuance of a state foreclosure proceeding against AKD's property.  After hearing, this Court ordered the relief requested in part because the AKD had not made any payments on the debt for the  three (3) years preceding bankruptcy and the property was encumbered beyond its value by the liens of Magazine and BizCapital.

On November 10, 2014, BizCapital also filed a Motion for Relief From the Automatic Stay in the Belladoggie case.  In response, two (2) third parties made offers to purchase the property.  A Motion to Approve the Sale was filed and at the hearing an auction for the property's purchase was conducted by the Court.   As a result of the auction, a purchase price of $2,560,000.00 was secured.  The price was sufficient to almost entirely satisfy the debt of BizCapital.  Thereafter, Belladoggie and BizCapital entered into an agreement regarding the remaining deficiency in exchange for a release of the second mortgage against the AKD property.

Following this Court's Order Lifting the Automatic Stay, AKD has continued to attempt its reorganization.  With only the Magazine debt to satisfy, AKD has worked to secure refinancing for the $2,174,844.27 debt.  In the meantime, Magazine  has continued to proceed against the property in a state court foreclosure proceeding.

Magazine has filed a Motion for New Trial styled as an Objection.  In summary, Magazine seeks to retry this Court's request that it provide AKD with a payoff of its indebtedness on or before February 2, 2015.[1]  That request came during a status conference on the AKD bankruptcy during which BizCapital indicated that it might rework or waive its deficiency against AKD's property due

---

[1]  Magazine also expends considerable ink in asserting its right to collect default interest. This issue is not addressed because it is not before the Court nor was it relief contained in the actions to which Magazine complains.

to the recent sale.  AKD's counsel reported that it was in communication with a lender willing to refinance the Magazine debt.  Magazine objects to having to supply its outstanding balance to AKD for the purpose of securing replacement financing.

While the stay has been lifted and Magazine intends to foreclose on its collateral, the property remains property of the estate and is subject to the Court's jurisdiction.  The once improbable reorganization of AKD now appears to have a second chance given the successful liquidation of its sister property.  That liquidation has freed this debtor's asset, creating equity and potentially the ability to refinance the first mortgage.

Magazine complains that it should not be required to provide a payoff of its debt to this Court.  It argues that AKD should be forced to assert that request in the state court foreclosure proceedings.  It further argues that to give a payoff to this Court is an intrusion into the foreclosure process.  Magazine's argument is without merit.

AKD is still attempting to reorganize and this property is critical to that effort.  A lender, acting in good faith, is required to accept, in lieu of foreclosure, a full payoff of its indebtedness.[2] This Court still maintains jurisdiction over not only this property but the claims against the estate, whether formal proofs of claim are on file or not.  The payoff must be provided in order to ascertain if Debtor can refinance and reorganize.

In addition, no request for new trial is properly brought by Magazine.   No Order exists on the Court's request, merely a minute entry on the results of the conference.  There is no matter available for "retrial."  Magazine has supplied the payoff to AKD and so the matter is moot.  This

---

[2] *See generally* Louisiana Civil Code Article 1759 which provides: "Good faith shall govern the conduct of the obligor and the obligee in whatever pertains to the obligation."

Court is of the opinion however, that the request it made of Magazine was nothing more than it would expect had the request been made by the Debtor outside of the conference.  Professional courtesy demands that counsel for Magazine supply the legally required information regarding its payoff in both a timely and cost efficient manner.   To do otherwise offends the Louisiana Rules of Professional Conduct and Code of Professionalism.[3]  For Magazine to argue that AKD should be forced to request payoff information through the state court rather than by voluntary cooperation is beyond the bounds of professional conduct.

Finally, Magazine is simply not harmed by the Court's request.  Assuming AKD does find alternative financing in an amount sufficient to satisfy Magazine, it will have received the benefit of its bargain.  It will also end Magazine's relationship with AKD  and free Magazine from any risk of future default.

For these reasons the Court finds that Magazine's Objection is without merit and Denied. Magazine's Motion for Expedited Hearing is moot.

New Orleans, Louisiana, February 9, 2015.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge

---

[3]  The Louisiana Rules of Professional Conduct have been incorporated by this Court.  *See* Local Rule 9011-1(C) of the United States Bankruptcy Court for the Eastern District of Louisiana.  Rule 8.4(d) of the Louisiana Rules of Professional Conduct provides that "[i]t is professional misconduct for a lawyer to . . . [e]ngage in conduct that is prejudicial to the administration of justice."  A precept, under the Louisiana Code of Professionalism, is that a lawyer "will cooperate with counsel and the court to reduce the cost of litigation and will readily stipulate to all matters not in dispute."